UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MELVINA SEMPER,

                        Plaintiff,

      - against -

NEW YORK METHODIST HOSPITAL, and
JOANNA ZANKO

                       Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
09-CV-5524 (RRM)(RER)

**MAUSKOPF, United States District Judge.**

       Plaintiff Melvina Semper ("Plaintiff") brings this action against Defendants New York

Methodist Hospital ("Methodist Hospital"), and hospital employee Joanna Zanko (together,

"Defendants"). Plaintiff's Complaint alleges fourteen causes of action, including violations of

42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title

VII"), New York State Human Rights Law, N.Y. Exec. Law §§ 296 *et seq.*, Administrative Code

of the City of New York, § 8-107.1(a), New York State Labor Law (Whistleblower Law) § 740,

and state-law claims of tortious interference with contractual relations, breach of the implied

covenant of good faith, and intentional and reckless infliction of emotional distress. Currently

before the Court is Defendants' motion for partial dismissal of Plaintiff's claims, including

Plaintiff's Title VII and state-law claims of tortious interference with contractual relations,

breach of implied covenant of good faith, and intentional infliction of emotional distress, for

failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure. In addition, Plaintiff seeks leave to amend her Complaint, and, to that

end, has attached a proposed Amended Complaint to her opposition to the motion to dismiss.

For the reasons stated below, Defendants' motion to dismiss is GRANTED, and Plaintiff's

motion for leave to amend her Complaint is DENIED.

## BACKGROUND

On a motion to dismiss,[1] the Court must "take[] factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor."  *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted).  Here, resolution of the motion to dismiss requires concurrently ruling on Plaintiff's motion for leave to amend.  Thus, the Court will consider facts pled in Plaintiff's proposed Amended Complaint[2] separately from those appearing in Plaintiff's original Complaint.

### I.    Original Complaint

Plaintiff, a black female, is a registered nurse.  She received a Master's Degree in Nursing, with a concentration in leadership and management, in May 2008.  (Compl. (Doc. No. 1) ¶ 5.)  Individual defendant Joanna Zanko is a white employee of Methodist Hospital and, at all times relevant to this action, Plaintiff's supervisor.  (*Id.* ¶ 3.)  Plaintiff was employed by Methodist Hospital from June of 2003 until September 12, 2008, when she was "summarily terminated or constructively discharged."  (*Id.* ¶ 4.)

---

[1]  Plaintiff argues that this Court should convert this motion to dismiss into a motion for summary judgment.  (Pl. Opp. Mem. 8.)  Specifically, Plaintiff alleges that she "was neither in possession nor did she rely upon the document annexed as Exhibit 4" while drafting her Complaint.  (*Id.* at 8.)  Plaintiff further claims she "does not even have a copy of the document and was not even aware that the document was in existence at the time the complaint was drafted."  (*Id.* at 8-9.)  Exhibit 4 is the Collective Bargaining Agreement (CBA) governing the relationship between Plaintiff and Defendant, referenced in Plaintiff's Complaint and Amended Complaint.  In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court will evaluate facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).  The Court considers the CBA, even though it was attached to Defendants' Motion to Dismiss rather than Plaintiff's Complaint.  *See Sampson v. Medisys Health Network Inc.*, No. 10-CV1342 (SJF) (ARL), 2011 WL 579155, at *7 (E.D.N.Y. Feb. 08, 2011) (holding that despite Plaintiff's argument that CBAs may not be considered upon a motion to dismiss because they were not attached to the complaint a court may rely on the CBA for purposes of determining Section 301 preemption because "[i]nsofar as the terms of plaintiffs' employment . . . are covered by CBAs, the existence of these CBAs are integral to the complaint, especially with respect to this Court's determination as to whether the state law claims are preempted by federal labor law").

[2]  Although the Proposed Amended Complaint is not properly before this Court, review of the contents contained therein is proper to determine whether amendment is futile.  *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 132 (2d Cir. 1993).

In early 2007, Methodist Hospital placed an advertisement inviting applications for several vacant nurse manager positions. (*Id.* ¶ 8.) Plaintiff, while attending a master's degree program in nursing, unsuccessfully applied to one of these positions. (*Id.*) Plaintiff later learned that Methodist Hospital had filled the vacant nurse manager positions with, according to Plaintiff, less-qualified, white candidates. (*Id.* ¶ 9.) Plaintiff complained to her supervisors and threatened to file official complaints with respect to these allegedly discriminatory hiring decisions. (*Id.* ¶ 10.)

In 2007, Plaintiff concluded that Methodist Hospital's medical student and resident supervision practices were inadequate. (*Id.* ¶ 11.) These practices, Plaintiff opined, failed to provide adequate supervision, leading to the incorrect prescribing of medicine and the administration of inaccurate medication dosages to Methodist Hospital's elderly patients. (*Id.*) Plaintiff met with her supervisors, including Zanko, on numerous occasions to address these concerns, and threatened to file formal complaints with appropriate authorities in the event her concerns remained unaddressed. (*Id.*)

Plaintiff alleges that, instead of addressing her concerns with respect to the Hospital's hiring and supervisory practices, Defendants "criticized, harassed, intensely monitored, and highly scrutinized" Plaintiff, threatening to terminate her on multiple occasions. (*Id.* ¶ 13.) On September 12, 2008, Plaintiff was "summarily terminated or constructively discharged" from Methodist Hospital. (*Id.* ¶ 14.)

Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on July 15, 2009. (Def. Mot. to Dismiss ("Def. Mot.") Ex. 2 (Doc. No. 9-3).) The EEOC issued a Dismissal and Notice of Rights on August 14, 2009. (Pl. Mem. in Opp. to Mot. to Dismiss ("Pl. Mem.") Ex. 1 (Doc. No. 10-3).) Plaintiff brought suit in the Supreme Court of

the State of New York, Kings County, on September 11, 2009.  Defendants removed the action

to this District pursuant to 28 U.S.C. § 1446, and immediately filed this motion to dismiss.

II.     **Additional Facts:  Amended Complaint**

Plaintiff provided this Court with a proposed Amended Complaint to which she also

attached, *inter alia*, an Affidavit ("Pl. Aff." or "Affidavit") purporting to add and clarify relevant

facts.  First, Plaintiff alleges that while employed by Methodist Hospital, she "witnessed several

deaths and or near death experiences at the Hospital."  (Pl. Proposed Am. Compl. (Doc. No. 10-

4) ¶ 18.)  Plaintiff attributes these deaths and or near death experiences to the Hospital's

"improper quality of patient care."  (*Id.*)

Second, Plaintiff alleges that during her employment at Methodist Hospital she

accumulated four weeks of vacation time and over 300 hours of unused sick time.  (*Id.* ¶ 26.)  It

is standard practice, Plaintiff claims, for Methodist Hospital to compensate employees for such

entitlements in the event of discharge or termination.  (*Id.* ¶ 27.)  Since Plaintiff's termination on

September 12, 2008, however, Methodist Hospital has not rendered these entitlements to

Plaintiff.  (*Id.* ¶ 28.)

Third, Plaintiff alleges that, prior to her discharge or termination, "on or about August 6,

2008," her Union filed a grievance pursuant to the parties' Collective Bargaining Agreement but

that "the Union failed to process her grievance despite plaintiff's entreaties."  (*Id.* ¶ 24.)

Drawing all possible inferences in favor of the Plaintiff, as this Court must when deciding

a motion to dismiss, the Plaintiff interposes a chronology of events explaining the belated filing

of her EEOC charge.  Following Plaintiff's termination on September 12, 2008, on the advice of

her attorney, Plaintiff prepared a draft of the EEOC charge and submitted it to her attorney for

review in May 2009.  (Pl. Mem. (Doc. No. 10-6) ¶ 8)  Plaintiff's attorney edited the charge,

dated it June 19, 2009, and returned a final version for her approval on or about that date.  (*Id.* ¶ 9; Def. Mot. Ex. 2.)  Plaintiff signed and "promptly" returned the final draft to her attorney.  (*Id.* ¶ 10.)  For reasons unknown, however, the final draft never reached the attorney.  (*Id.* ¶ 12.)  Her attorney had incorrectly assumed she would send the charge directly to the EEOC and therefore did not await any packages from Plaintiff.  (*Id.* ¶ 12.)  On July 6, 2009, roughly seventeen days after the completion of the EEOC final draft and three days shy of the statutory filing deadline, Plaintiff contacted her attorney, and concluded that the EEOC charge had never been delivered.  (*Id.*)  On July 8, 2009, Plaintiff signed and dated a new set of documents and mailed them to her attorney, who appended these documents to the original EEOC final draft (still dated June 19, 2009) and promptly filed the documents with the EEOC on July 13, 2009, 304 days after Plaintiff's termination.  (*Id.* ¶¶ 13–15.)  The EEOC received the complaint, as evidenced by the received stamp contained on the document, on July 15, 2009.  (Def. Mot. Ex. 2.)

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a complaint.  As required by Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a 12(b)(6) motion must "take[] factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor."  *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted).  A complaint need not contain "'detailed factual

allegations,'" but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–158 (2d Cir. 2007)).

In *Swierkiewicz v. Sorema N.A.*, the Supreme Court rejected the notion that there is a heightened pleading standard in discrimination cases, holding that the survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a *prima facie* case under the standard set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). 534 U.S. 506, 510 (2002) ("The *prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."); *see also Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 71–72 (2d Cir. 2006) (applying *Swierkiewicz* to retaliation claims); *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006) (applying *Swierkiewicz* to discrimination claims under Title VII).

Moreover, the Second Circuit has held that the framework articulated in *Swierkiewicz* for analyzing whether a plausible claim for discrimination has been pleaded remains viable in the wake of *Twombly* and *Iqbal*. *See, e.g.*, *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120–21 (2d

Cir. 2010) ("[A]lthough *Twombly* and *Iqbal* require factual amplification [where] needed to render a claim plausible, we reject [appellant's] contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible." (internal quotations and citations omitted)); *Boykin v. Key Corp.*, 521 F.3d 202, 213 (2d Cir. 2008) (noting that *Twombly* "affirmed the vitality of *Swierkiewicz*, which applied a notice pleading standard, and explained that its decision did not 'require heightened fact pleading of specifics.'"); *Gillman v. Inner City Broad. Corp.*, No. 08 Civ. 8909 (LAP), 2009 WL 3003244, at *3 (S.D.N.Y. Sept. 18, 2009) ("*Iqbal* was not meant to displace *Swierkiewicz*'s teachings about pleading standards for employment discrimination claims because in *Twombly*, which heavily informed *Iqbal*, the Supreme Court explicitly affirmed the vitality of *Swierkiewicz*."); *accord E.E.O.C. v. Propak Logistics, Inc.*, No. 1:09-cv-311, 2010 WL 3081339, at *5 (W.D.N.C. Aug. 6, 2010) ("[E]ven after *Twombly*, an employment discrimination plaintiff is not required to plead specific facts but may rely on notice pleading requirements." (citing *Boykin*, 521 F.3d at 212–15)).

## DISCUSSION

### I.  Title VII Claims

In her Complaint, Plaintiff alleges that Defendants engaged in unlawful discrimination, retaliation, and harassment – each constituting an unlawful employment practice prohibited by Title VII.

#### a.  Individual Liability Under Title VII

Plaintiff's Title VII claims against individual defendant Zanko must be dismissed as a matter of law, because there is no individual liability under Title VII.  (Def. Mot. (Doc. No. 9-7) ("Def. Mem.") 1.)  While Title VII grants employees the right to be "free from discrimination in

employment on the basis of race, color, gender, national origin, or religion" by an employer, 42 U.S.C. § 2000e-3(a), "individuals are not subject to liability under Title VII." *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam). Accordingly, Plaintiff's Title VII claims against individual Defendant Zanko are DISMISSED.

### b. Prerequisites to Filing a Title VII Claim

A Plaintiff must timely file an EEOC charge as a prerequisite to a Title VII claim in federal court. *See Francis v. City of N.Y.*, 235 F.3d 763, 767 (2d Cir. 2000). To be timely, a prospective plaintiff must file a charge with the EEOC "within three hundred days after the alleged unlawful employment practice occurred . . . ."[3] 42 U.S.C. 2000e-5(e)(1), (f)(1); *Williams v. N.Y. City Health & Hosp. Corp.*, No. 08-CV-4132 (RRM)(LB), 2010 WL 2836356, at *3 (E.D.N.Y. Jul. 16, 2010). Failure to file a timely charge acts as a bar to a plaintiff's ability to bring the action. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Butts v. N.Y. City Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *aff'd after remand on other grounds*, 173 F.3d 843 (2d Cir. 1999).

Courts strictly adhere to the 300-day filing period. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 109, 114 (2002). The 300-day period accrues when a prospective plaintiff "knew or should have known of the adverse treatment upon which he or she will ultimately sue." *McMillian v. N.Y. City Dep't of Corr.*, No. 97-9261, 1998 WL 385986, at * 1 (S.D.N.Y. May 29, 1998) (citing *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992)). The court's inquiry does not focus on "the point at which the *consequences* of the act become painful;" rather, "[t]he

---

[3] The relevant provisions of Title VII generally require filing of an EEOC charge within 180 days of the unlawful employment practice. But if "the practice occurs in a State that has laws prohibiting the sort of discrimination plaintiff alleges, and also provides a State agency to enforce such laws . . . [a] claimant has 300 days to file with the EEOC." *Dezaio v. Port Auth. of N.Y. & N.J.*, 205 F.3d 62, 64 (2d Cir. 2000). This is the case in New York; thus, a plaintiff has 300 days to file. *See Canales-Jacobs v. N.Y. State Office of Court Admin.*, 640 F. Supp. 2d 482, 501 (S.D.N.Y. 2009).

timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision." *Morse*, 973 F.2d at 125 (emphasis in original) (citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)). However, the timely charge requirement is "not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes*, 455 U.S. at 393.

Here, Plaintiff alleges she was terminated on September 12, 2008, which serves as the latest date of accrual for any cause of action arising out of the scope of her employment with Methodist Hospital. Plaintiff filed her EEOC charge on July 15, 2009, 306 days following her termination. Plaintiff's claim is time-barred unless it can be saved by equitable tolling or the application of the continuing violation doctrine. Because neither properly applies to the facts of this case, Plaintiff's Title VII claims are time-barred and Defendant's motion to dismiss the Title VII claims is GRANTED.

### c. Equitable Tolling

Plaintiff argues that the doctrine of equitable tolling applies here and consequently excuses the six-day delay in her filing of the EEOC charge. Specifically, Plaintiff alleges that she exercised "reasonable diligence" in pursuing her EEOC claim and that "for some reason" her EEOC charge was either lost or delivered to the wrong address. (Pl. Mem. 10.) The Court finds equitable tolling to be inapplicable.

The Supreme Court has recognized that the 300-day time limit for filing an EEOC charge is subject to equitable tolling. *Zipes*, 455 U.S. at 393. The doctrine of equitable tolling rests on the assumption that a statute of limitations will not run against a plaintiff unaware of her cause of action. *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1999) (internal citations omitted) (noting that the doctrine of equitable tolling developed in response to

circumstances in which defendants' fraudulent activity prevented plaintiffs from discovering causes of action until after the expiration of statute of limitations periods). Courts have applied the doctrine of equitable tolling in "three general circumstances: (1) when an employer's actively misleading conduct is responsible for the employee's ignorance of [her] cause of action; (2) when tolling of the time bar might be permitted as a matter of fairness; and (3) when extraordinary circumstances have prevented the employee from exercising [her] rights." *Amar v. Hillcrest Jewish Ctr.*, No. 05-CV-03290 (RRM)(RML), 2009 WL 891795, at * 19 (E.D.N.Y. Mar. 31, 2008) (citing *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985), *cert. denied*, 474 U.S. 1015 (1985)).

In considering whether equitable tolling applies, courts consider whether the party seeking its application: "(1) has acted 'with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). "[T]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) Instead, equitable tolling may be appropriate where, for instance, "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct . . . ." *Id.*; *see also Morgan*, 536 U.S. at 113; *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (noting that equitable tolling should apply only in "rare and exceptional circumstance[s]").

Plaintiff has failed to demonstrate that her circumstances are so rare and exceptional as to render the application of equitable tolling proper. Instead, Plaintiff appears to ask this Court to

equitably toll the operation of a strict limitations period on account of her or her attorney's ordinary neglect, or alternatively because her tardiness in filing the EEOC charge was minimal. In her original Complaint, Plaintiff only asserts that she was terminated on September 12, 2008; that she filed an EEOC charge in July 2009; and that she received a Dismissal and Notice of Rights from the EEOC on August 14, 2009. In fact, Plaintiff's EEOC charge bears a "received stamp" dated July 15, 2009, 306 days after Plaintiff's termination. There is nothing on the face of Plaintiff's original Complaint or in the documents referenced therein that suggests that circumstances were so extraordinary that equitable tolling should apply.

Plaintiff by affidavit appended to her proposed Amended Complaint further alleges that her charge to the EEOC "was either lost or delivered to the wrong address" and as a result, her charge was "delayed by merely six days." (Pl. Mem. 10.) The loss or misdelivery referenced in Plaintiff's Opposition Memo ostensibly refers to the incident in which Plaintiff unsuccessfully sent the EEOC charge to her attorney on June 19, 2009, expecting him to forward it to the EEOC. There is little to no support, however, for the proposition that equitable tolling excuses so-called lost-in-the-mail scenarios.

It is true that, in certain situations, mailing or clerical errors may trigger equitable tolling. *See Johnson v. Smarte Carte, Inc.*, No. 04-CV-5573 (JFB)(SMG), 2007 WL 1176736, at *2 (E.D.N.Y. Apr. 20, 2007) (equitably tolling 90-day period in which plaintiffs must file suit after receiving EEOC right to sue letter because EEOC sent all correspondence to incorrect address due to clerical error). Equitable tolling applies to clerical or mailing complications primarily in those situations where "the EEOC, not plaintiff, was derelict in its duties." *Jacobs v. SUNY at Buffalo Sch. of Medicine*, 204 F. Supp. 2d 586, 592 (W.D.N.Y. 2002) (applying equitable tolling where Plaintiff actively pursued her claim but filed an untimely charge due to misinformation

given to her by the EEOC); *see also Smith v. Chase Manhattan Bank*, No. 97 Civ. 4507 (LLM), 1998 WL 642930, at *4 (S.D.N.Y. Sept. 18, 1998) (applying equitable tolling where EEOC sent right to sue letter to incorrect address, though Plaintiff notified the EEOC of an address change); *O'Connor v. Pan Am*, No. 88 Civ. 5962 (KTD), 1990 WL 118286, at *2 (S.D.N.Y. May 4, 1990) (applying equitable tolling where Plaintiff filed a late charge because the EEOC mislead her about her rights).  Absent misleading or negligent conduct by the EEOC or the Plaintiff's employer facing liability, equitable tolling generally does not apply.  *See Dillmon v. Combustion Eng'ring*, 784 F.2d 57, 60 (2d Cir. 1986) (refusing to find equitable tolling where plaintiff failed to "present any evidence that he was unaware of his cause of action . . . because of [defendant's] misleading conduct" and because circumstances were not extraordinary).  Here, there is no indication that the delay resulted from clerical error or misleading conduct attributable to the EEOC or to Plaintiff's employer, or any other extraordinary circumstance.

Furthermore, though Plaintiff contends that the EEOC submission was lost in the mail, the failure to discover that this was the case was the result of miscommunication between her and her attorney.  Plaintiff believed her attorney was responsible for sending the EEOC charge; her attorney thought Plaintiff had sent it to the EEOC directly.  Plaintiff's failure to follow up with her attorney until approximately seventeen days after mailing him the final draft of her EEOC charge, and her attorney's concomitant failure to confirm with Plaintiff that the EEOC charge had been sent, more closely resembles a case of ordinary, garden variety neglect than a circumstance so extraordinary as to trigger application of equitable tolling.

Indeed, the Second Circuit has refused to apply equitable tolling in cases of ordinary attorney neglect, holding, for example, that "equitable tolling of the [EEOC] filing is inappropriate . . . notwithstanding the plaintiff's allegations that she was given incorrect

information by both an EEOC employee *and her own counsel*." *See Crossman v. Crosson*, 905 F. Supp. 90, 95 n.3 (E.D.N.Y. 1995) (emphasis added) (citation omitted)*; see also South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) ("[L]ack of due diligence on the part of plaintiff's attorney is insufficient to justify application of an equitable toll."). Attorney neglect falls within the "garden variety claims of excusable neglect" to which equitable tolling does not apply. *Irwin*, 498 U.S. at 96 (refusing to apply equitable tolling where plaintiff failed to file a timely claim because plaintiff's lawyer was out of his office when the EEOC notice was received). Likewise, to the extent that this miscommunication may have resulted from Plaintiff's neglect, the same principle applies; Plaintiff's actions amounted to no more than excusable neglect undeserving of equitable tolling. *See McClendon v. Bronx Cnty. Dist. Attorneys Office*, No. 09 Civ. 03632 (WGY), 2011 WL 507090, at *5 (S.D.N.Y. Feb. 3, 2011) (holding that plaintiff's failure to notify attorney of receipt of right to sue letter and failure to confirm that the attorney had received the letter did not warrant the application of equitable tolling).

Finally, Plaintiff points to the "mere six day[]" delay as grounds alone for applying the equitable tolling doctrine. (Pl. Mem. 10.) No principle of law supports the proposition that the applicability of equitable tolling is measured by time alone. Rather, the relevant inquiry centers of the factual *circumstances* leading to the delay; equitable tolling does not excuse ordinary neglect. *See Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 147 (2d. Cir 1984) (holding, in the context of the 90-day period during which a plaintiff must bring suit after receiving a right to sue letter, that "in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day") (citation omitted); *Toolan v. Bd. of Educ. of City of N.Y.*, No. 02 Civ. 6989(DC), 03 Civ. 576 (DC), 2003 WL 22015437, at *2

(S.D.N.Y. Aug. 25, 2003) (refusing to apply equitable tolling where plaintiff filed suit *one* day after the 90-day filing period).

Therefore, equitable tolling does not apply, and Plaintiff's Title VII Claims are time-barred.

### d. The Continuing Violation Doctrine

Plaintiff claims that even if her pre- and post-September 12, 2008 claims are time-barred, because "the defendants are still sitting on plaintiff's earned vacation time and unused sick time, and have refused to pay plaintiff those entitlements . . . plaintiff's Title VIII claims including but not limited to her pre/post September 12, 2008 claims are saved by the continuing violation doctrine." (Pl. Mem. 11.) This Court disagrees.

Under the continuing violation doctrine, discriminatory acts occurring prior to the expiration of the 300-day EEOC filing period can be saved "if a plaintiff has experienced a continuous practice and policy of discrimination," in which case "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of [the discriminatory practice or policy]." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (citing *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992)) (internal quotations omitted). In other words, "[u]nder the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) (internal quotation and citation omitted).

The Second Circuit has recognized two general situations in which the continuing violation doctrine applies: (1) "where there is proof of specific ongoing discriminatory polices or

practices," or (2) "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). In these circumstances, a new 300-day limitations period begins to toll after each discrete act, even though such acts might be similar in nature and committed by the same employer. *Morgan*, 536 U.S. at 112.

However, "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period" even if the acts are related. *Id.* Discrete discriminatory acts include "failure to promote, denial of transfer, or refusal to rehire." *Id.* at 114. In contrast, the archetypical continuing violation is a hostile work environment claim, since its "very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (citations omitted).

Nothing in Plaintiff's original Complaint suggests any hostile work environment or ongoing discriminatory policy extended beyond the date of her termination. Quite the contrary, Plaintiff alleged that discrimination took place while employed at Methodist Hospital prior to and on the date of her termination, September 12, 2008. On the basis of the facts pled in Plaintiff's original Complaint, the continuing violation is irrelevant.

In her proposed Amended Complaint, Plaintiff argues that Methodist Hospital's persistence in withholding from her duly-earned vacation and unused sick time triggers the application of the continuing violation doctrine. However, refusal to pay benefits more closely resembles a discrete discriminatory act actionable in itself than evidence of an ongoing discriminatory policy or mechanism – the failure to pay benefits related to termination is more

properly understood as a one-time event than an ongoing practice of discrimination. *See Allah v. City of N.Y. Dep't of Parks & Recreation*, No. 01-9114, 2002 WL 31119698, at *3 (2d. Cir. Sept. 25, 2005) (refusing to apply continuing violation doctrine to discrete acts such as transfers, termination, loss of pay, and loss of vacation).

Accordingly, Plaintiff may not use Methodist Hospital's withholding of benefits to render timely any alleged discriminatory actions falling outside of the statutory filing period. *See Morgan*, 536 U.S. at 112 ("[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period.") As the pre-termination allegations, and the termination itself, both occurred outside of the statutory time period, they are time-barred notwithstanding an independent discrete act such as withholding benefits that may hypothetically fall within the statutory time-period.

Plaintiff filed a revised EEOC charge after the commencement of this action on April 22, 2010 – 587 days after her termination – in which she complained of Methodist Hospital's refusal to pay her earned benefits. Nothing in the record indicates that Plaintiff received a response from the EEOC on these claims. Regardless, because the alleged withholding of benefits is a discrete discriminatory act, the 300-day filing period accrues when Plaintiff knew or should have known that Methodist Hospital was unlawfully withholding her pay entitlements: here, at Plaintiff's termination on September 12, 2008, or shortly thereafter. *Morse*, 937 F.2d at 125. Plaintiff's Amended Complaint filed on April 22, 2010, 527 days later, is fatally beyond the 300-day filing limit. Therefore, insofar as Methodist Hospital's withholding of plaintiff's earned vacation and unused sick time is a separately actionable discrete discriminatory act, Plaintiff's EEOC charges were still untimely. Therefore, this claim is also time-barred.

### e. Timeliness of Plaintiff's Title VII Claims

Because Plaintiff filed her charge with the EEOC 306 days after she knew or should have known of the discriminatory employment practices underlying this suit – six days after the filing deadline – and because neither equitable tolling nor the continuing violation doctrine cleanses this deficiency, Plaintiff's Title VII claims are untimely as a matter of law.  Defendants' motion to dismiss Plaintiff's Title VII claims is GRANTED.

## II.     Motion for Leave to Amend

Plaintiff seeks leave to amend her Complaint, appending to her Opposition to Defendant's Motion for Partial Dismissal a proposed Amended Complaint containing additional factual allegations and enhanced legal theories.  (Pl. Mem. 1.)  However, these do not alter the Court's determination as to whether Plaintiff's Title VII claims are inapplicable to individual defendants and time-barred, or whether Plaintiff's state-law tort and contract claims are preempted by federal labor law.  Accordingly, amendment would be futile and Plaintiff's motion for leave to amend is denied.

Rule 15(a) of the Federal Rules of Civil Procedure requires courts to freely grant leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a).  The decision whether to grant leave to amend is within the discretion of the District Court.  *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (internal citation omitted).  A court may deny a plaintiff leave to amend on a showing of undue delay, bad faith, dilatory motive by the movant, undue prejudice to the non-movant, or futility.  *See Protter v. Nathan's Famous Sys., Inc.*, 904 F. Supp. 101, 111 (E.D.N.Y. 1995) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  The non-moving party bears the burden of demonstrating why leave to amend should be denied on futility grounds.  *See Blaskeiwicz v. Cnty. of Suffolk*, 29 F. Supp. 2d 134, 137–38 (E.D.N.Y 1998) (citing *Harrison v.*

*NBD Inc*., 990 F. Supp. 179, 185 (E.D.N.Y 1998)).  Here, Defendants allege that Plaintiff's amendment would be futile, and thus bear the burden of demonstrating that Plaintiff's amendments will be futile in order to properly justify this Court's denial of Plaintiff's request for leave to amend.

An amendment is futile when it is "unlikely to be productive."  *Ruffolo*, 987 F.2d 129 at 131 (internal citations omitted).  In other words, denial of leave to amend based on futility is proper when additional facts do not or cannot remedy the deficiency of an initial pleading.  *See Talley v. Brentwood Union Free Sch. Dist*., 728 F. Supp. 2d 226, 233 (E.D.N.Y. 2010) (denying leave to amend).  An amendment is futile if it cannot defeat a motion to dismiss.  *See Riccuiti v. N.Y.C. Transit Auth*., 941 F.2d 119, 123 (2d Cir. 1991).

Plaintiff's proposed Amended Complaint does not cure the deficiencies in the original Complaint .  As discussed above, Plaintiff's Title VII claims cannot be brought against the individual defendant and are time-barred.  As discussed more fully below, Plaintiff's state law tort and contract claims are preempted by federal labor law and fail to state a claim upon which relief may be granted.  Accordingly, because Plaintiff's Proposed Amended complaint is futile, the motion to amend is DENIED.

### III.  **Preemption of State Tort and Contract Law Claims**

Plaintiff asserts claims of tortious interference with contractual relations, breach of the implied covenant of good faith, and infliction of emotional distress.  (Compl. ¶¶ 59–74.) Defendants contend that federal labor law preempts Plaintiff's state law tort and contract claims. This Court agrees, and finds that the Plaintiff's state law tort and contract claims are either preempted or fail to state a claim upon which relief can be granted.

### a. Section 301 Preemption

Section 301 of the Labor Management Relations Act of 1947 (LMRA)[4] "require[s] the conclusion that substantive principles of federal labor law must be paramount in the area covered by the [LMRA]." *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962) (discussing preemption of state law claims arising under collective bargaining agreements). "[W]hen resolution of a state-law claim is substantially dependant upon analysis of the terms of an agreement made between the parties in a labor contract . . . that claim must be dismissed as preempted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); s*ee also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988) ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law[,] which might lead to inconsistent results since there could be as many state-law principles as there are States[,] is pre-empted and federal labor-law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute.").

### b. Tortious Interference[5]

Plaintiff alleges that individual defendant Zanko tortiously interfered with her contractual relationship with Methodist Hospital by wrongfully terminating Plaintiff. (Compl. ¶¶ 59–64.) Defendants argue that because Plaintiff's claim necessarily requires interpretation of the

---

[4] Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Though Section 301 ostensibly confers jurisdictional authority on federal courts to hear cases arising under labor contracts, the Supreme Court has recognized that Section 301 is "more than jurisdictional" – it also "authorizes federal courts to fashion a body of federal law for the enforcement of . . . collective bargaining agreements." *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957).

[5] Further, Plaintiff abandons this claim in her Amended Complaint, and does not respond to Defendants' preemption arguments with respect to this claim.

collective bargaining agreement ("CBA") between the parties, it is preempted by Section 301 of the LMRA. (Def. Mem. 11.)

In determining whether Section 301 of the LMRA preemption applies to a claim, courts first examine the elements of the state-law claims at issue. *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 233 (2d. Cir. 1997). Second, courts determine whether adjudication of any element of the state law claim necessitates interpretation of the contract. *Zuckerman v. Volume Servs. Am., Inc.*, 304 F. Supp. 2d 365, 370 (E.D.N.Y. 2004) (citing *Foy*, 127 F.3d at 233). If resolution of one of these elements "depends upon the meaning of a collective-bargaining agreement," then the claim is preempted. *Lingle*, 486 U.S. at 405–06. In contrast, if "plaintiff's claim can be determined without construing the terms" of the CBA, then there is no preemption. *Zuckerman*, 304 F. Supp. 2d at 370. "The mere fact that a labor agreement must be consulted or referred to when deciding a claim does not necessarily lead to the conclusion that the claim is preempted." *Id.*

To allege a claim of tortious interference with contract under New York law, a Plaintiff must show "the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996) (citations omitted).

Here, the first and fourth elements of Plaintiff's claim – existence of a valid contract and breach – require interpretation of the parties' CBA. Indeed, there is no way to adjudicate breach of contract absent interpretation of the underlying contract. *See Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d. Cir 1990) ("Under traditional principles of New York law, a party may not recover for tortious inducement of breach of a contract without proving that the underlying

contract has been breached.")  Resolution of Plaintiff's tortious interference with contract claim is substantially dependent – if not utterly reliant – on the interpretation of the CBA, and is therefore preempted by Section 301 of the LMRA.  *See Sampson v. Medisys Health Network Inc.*, No. 10-CV-1342 (SJF) (ARL), 2011 WL 579155, at *8 (E.D.N.Y. Feb. 08, 2011) ("[A]ny claims arising from breach of a plaintiff's [collective bargaining agreement] are preempted by section 301."); *Arnold v. Beth Abraham Health Servs., Inc.*, No. 09 Civ. 6049 (DLC), 2009 WL 5171736, at *4 (S.D.N.Y. Dec. 30, 2009) ("Such claims [of tortious interference with contract] must necessarily fail because they are preempted by Section 301 of the LMRA."); *Korthas v. NE Foods, Inc*, No. 5:03-CV-552 (HGM/DEP), 2006 WL 519401, at *9 (N.D.N.Y. Feb. 27, 2006) (holding section 301 preempted plaintiff's claim for tortious interference with contract because that claim would "require interpretation" of a collective bargaining agreement); *Amendolare v. Schenkers Int'l Forwarders, Inc.*, 747 F. Supp. 162, 172 (E.D.N.Y. 1990) (holding plaintiff's state law claims of, *inter alia*, tortious interference with contract are preempted by section 301 of LMRA). Defendant's motion to dismiss Plaintiff's tortious interference with contract claim is GRANTED.

### c.  Breach of the Implied Covenant of Good Faith

#### i.  *State Claim Preemption*

Plaintiff alleges that Defendants are liable for breach of the implied covenant of good faith.  (Compl. ¶¶ 65–69.)  Defendants allege that this claim is preempted by federal labor law pursuant to Section 301.  (Def. Mem. 12.)

In New York, "an implied covenant only arises with respect to contractual relationships." *Allocco v. Dow Jones & Co., Inc.*, No. 02 Civ. 1029 (LMM), 2002 WL 1402084, at *6 (S.D.N.Y. Jun. 27, 2002) (internal citations omitted) (citing *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d

86, 91 (N.Y. 1983)). New York law "implies a covenant of good faith and fair dealing, pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (internal quotation marks and citation omitted). Accordingly, there can be no covenant of good faith implied unless there is a contract between two parties upon which to imply it. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198–99 (holding that "[the implied covenant] can only impose an obligation consistent with other mutually agreed upon terms in the contract.") (internal quotations omitted).

Here, the only contract between the parties is the CBA. (Def. Mem. Ex. 4 (Doc. No. 9-5).) When "the only contract that exists between plaintiff and defendants is a [CBA] and any implied obligation that may exist would be in aid of that agreement and would require interpretation of that agreement . . . [a] claim for breach of the implied covenant of good faith . . . is preempted." *Allocco*, 2002 WL 1402084, at *6. The resolution of this claim is "substantially dependent upon analysis of the terms of" the CBA and therefore is preempted by federal law. *Allis-Chambers Corp.*, 471 U.S. at 220.

### *ii.   Federal Claim Under the LMRA*

Even were this Court to read Plaintiff's Complaint and Amended Complaint as alleging a federal claim under Section 301 of the LMRA, Plaintiff has nonetheless failed to state a claim upon which relief may be granted. *See Lueck*, 471 U.S. at 220 ("When resolution of a state-law claim is substantially dependent upon analysis of the terms of a [CBA], that claim must either be treated as a § 301 claim . . . or dismissed as preempted . . . .").

To successfully bring an action under section 301of the LMRA, an employee must exhaust grievance procedures demanded by the CBA at issue. *See Hines v. Anchor Motor*

*Freight, Inc.*, 424 U.S. 554, 563 (1976).  Plaintiff nowhere alleges, in either her Complaint of her proposed Amended Complaint, that she exhausted her grievance procedures as demanded by the CBA.  Thus, in order to make out a plausible section 301 claim, Plaintiff must have adequately pled excusal from these requirements.  The exhaustion requirement may be excused in two instances:  (1) where the employer has repudiated the grievance procedure, and (2) where the union has breached its duty of fair representation.  *Allocco*, 2002 WL 1402084, at *3.

Plaintiff nowhere alleges that Methodist Hospital repudiated the grievance procedure.  The sole argument available to Plaintiff is therefore a "hybrid" section 301 claim.  "When an employee brings a lawsuit against his employer for termination in violation of his rights under the CBA and the union failed to enforce the employee's rights under the CBA, the employee alleges violation of the CBA and a breach of the union's duty of fair representation."  *Allocco*, 2002 WL 1402084, at *7 (internal citation omitted).  Even though Plaintiff does not here bring suit against the Union, if "it is clear from [her] allegations regarding the Union's failure to pursue [her] grievance that [s]he has a fair representation claim against the Union . . . this suit is a hybrid action . . ."  *Id.* (internal citations omitted).  A hybrid section 301 claim thus must allege two interrelated claims:  first, that the employer violated the CBA, and second, that the union did not "properly represent the employee in pressing [her] grievance against the employer.  *Chaney v. Greyhound Lines*, No. 09 CV 7593 (HB), 2010 WL 2541369, at * 3 (S.D.N.Y. Jun. 23, 2010) (citing *McKee v. Transco Prods., Inc.*, 874 F.2d 83, 86 (2d Cir. 1989)).

Even assuming, *arguendo*, that Plaintiff has sufficiently pled facts to support a claim that Methodist Hospital breached the CBA, Plaintiff has utterly failed to plead sufficient facts to support a claim that the Union breached its duty of fair representation.  To prove that a union has breached its duty of fair representation, the plaintiff must:  (1) establish "that the union's actions

or inactions [were] either arbitrary, discriminatory, or in bad faith" and (2) "demonstrate a causal connection between the union's wrongful conduct and their injuries." *Llanos v. Brookdale Univ. Hops. & Medical Cent.*, No. 10-CV-1726 (DLI)(RML), 2011 WL 809615, at *3 (E.D.N.Y. 2011) (internal quotations omitted).

Plaintiff's Complaint makes no mention of the Union's failure to file her grievance. Plaintiff's Amended Complaint alleges that "on or about August 6, 2008, the Union filed a grievance on behalf of the plaintiff. However, the Union failed to process her grievance despite plaintiff's entreaties." (Pl. Proposed Am. Compl. ¶ 24.) From these facts, then, Plaintiff asks the Court to conclude that the Union's failure to process her grievance constituted a breach of its duty of fair representation so as to excuse Plaintiff from the exhaustion requirement. (Pl. Mem. (Doc. 10) 21.)

Where a plaintiff has "not alleged any facts to support" her claims of breach of duty of good faith, the claim must be dismissed. *Id.*; *see Chaney*, 2011 WL 2541369, at *4 (dismissing hybrid claim where plaintiff merely paraphrased the legal standard and failed to "allege any facts that suggest the Union failed to adequately represent her . . . "). Even where a plaintiff alleges "arbitrary and bad faith conduct" on the part of the union, conclusory allegations are insufficient to defeat a motion to dismiss. *Llanos*, 2011 WL 809615, at *3. Plaintiff fails to make any claim regarding the manner in which or reasons behind the Union's failure to process her grievance. *Llanos*, 2011 WL 809615, at *3.

Accordingly, though Plaintiff asks the Court to treat her state claims as section 301 claims (Pl. Mem. 20-21), Plaintiff has failed to "plead enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Chaney*, 2010 WL 2541369, at *4

(dismissing hybrid claim where plaintiff "did not allege any facts" to suggest a Union breached

its duty of fair representation). Defendant's motion to dismiss this claim is GRANTED.

### d. Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendants engaged in extreme and outrageous conduct,

intentionally or recklessly causing Plaintiff severe emotional distress to Plaintiff (IIED).

(Compl. ¶¶ 70–74.) Defendants argue that Plaintiff's IIED claim, insofar as it is based on

conduct occurring in the normal course of Plaintiff's business relationship with Methodist

Hospital, is preempted. The Court finds that, regardless of preemption,[6] Plaintiff has failed to

state a claim upon which relief may be granted with respect to her IIED claim.

In New York, to state a claim for intentional infliction of emotional distress, a plaintiff

must allege: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress,

(3) a causal connection between the conduct and the injury, and (4) severe emotional distress."

*Bender v. City of N.Y.*, 78 F.3d 787, 790 (2d. Cir. 1996). With respect to the first element, to

satisfy the standard under New York law, defendant's conduct must be "so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community." *Murphy*, 448 N.E.2d at

90. Whether the conduct is "outrageous" is a matter of law to be decided by the court. *Stuto v.

Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (citation omitted). The bar is extremely high, and

"[t]his highly disfavored cause of action is almost never successful." *McGown v. City of N.Y.*,

---

[6] IIED claims have been held to be preempted where resolution of the claim "depends upon whether defendants' conduct was prohibited or condoned by the terms of the collective bargaining agreement." *Seaver v. Yellow Freight Sys., Inc.*, No. 96-CV-105A (H), 1996 WL 622639, at *4 (W.D.N.Y. Aug. 22, 1996). *Korthas*, 2006 WL 519401, at *6 (finding Section 301 preemption for IIED claim against employer based on allegedly wrongful termination, because CBA addressed the employer's "rights and duties with respect to disciplining its employees.") Reading the facts in the original Complaint in the light most favorable to Plaintiff, the IIED claim is based on the alleged hostile work environment and discriminatory termination alleged by Plaintiff. Resolution of the IIED claim requires analyzing the rights and obligations of both parties under the CBA with respect to termination and work environment and the IIED claims arising under the original Complaint are preempted.

No. 09 Civ. 8646 (CM), 2010 WL 3911458, at *5 (S.D.N.Y. Sept. 9, 2010); *see also Ochei v. The Mary Manning Walsh Nursing Home Co.*, No. 10 Civ. 2548 (CM)(RLE), 2011 WL 744738, at *8 (S.D.N.Y. Mar. 1, 2011) (dismissing IIED claim); s*ee also Armatas v. Maroulleti*, No. 08-CV-310 (SJF)(RER), 2010 WL 4340437, at *19 (E.D.N.Y. Oct. 19, 2010). In fact, the Court of Appeals of New York has noted that, before 1993, every IIED claim before it had "failed because the alleged conduct was not sufficiently outrageous." *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993) (citing *Freihofer v. Hearst Corp.*, 480 N.E.2d 349, 355 (N.Y. 1985)).

### i. Allegations in Original Complaint

Plaintiff alleges, in her Complaint, that the alleged failure to promote, the discrimination she experienced, retaliation, harassment, and her termination, constitute IIED. "Courts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a 'deliberate and malicious campaign of harassment or intimidation.'" *Cohn-Frankel v. United Synagogue of Conservative Judaism*, 667 N.Y.S.2d 360, 362 (App. Div. 1998) (quoting *Nader v. Gen. Motors Corp.*, 25 N.Y.2d 560, 569 (1970)). Thus, "New York Courts are reluctant to allow [IIED] claims in employment discrimination cases. The courts are wary of allowing plaintiffs to recharacterize claims for wrongful or abusive discharge . . . as claims for intentional infliction of emotional distress." *Stevens v. N.Y.*, 691 F. Supp. 2d 392, 399 (S.D.N.Y. 2009) (quoting *Lydeatte v. Bronx Overall Econ. Dev. Corp.*, No. 00 Civ. 5433(GBD), 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001)). "Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of [IIED] because the conduct alleged is not sufficiently outrageous." *Id.*

Plaintiff has not made any showing that the conduct at issue rises to the necessary level of outrageousness to sustain her claim.

### ii. Allegations in Amended Complaint

Plaintiff's proposed Amended Complaint adds facts in support of her IIED claim. In addition to the claims previously addressed, Plaintiff alleges that she "witnessed several deaths and or near death experiences at the Hospital that were caused by the defendants' improper quality of patient care." (Pl. Proposed Am. Compl. ¶ 18.) Plaintiff further asserts she was "forced to witness" these "traumatic events."[7] (*Id.*)

However, Methodist Hospital's alleged failure to adequately supervise medical students or residents and Plaintiff's exposure to the resulting deaths or near death experiences of elderly patients simply cannot substantiate an IIED claim. The allegations do not rise to the level of outrageousness necessary to constitute a valid claim for IIED under New York law, and they do not sufficiently allege that there was "intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress." *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001).

Plaintiff simply has not and cannot meet the burden of the outrageousness requirement. Plaintiff must overcome an exceedingly high bar to successfully plead that witnessing deaths in the scope of her employment as a nurse can show "outrageous" conduct on the part of Defendants. Surely, being "forced to witness" death is not unusual – indeed, it is likely routine – for nurses, particularly for those treating elderly patients. The "improper quality of patient care" alleged is not only wholly conclusory, it is also inadequate to meet the requirement that the

---

[7] The Court notes that the CBA does not govern the standard of care owed by Methodist Hospital to its patients. Therefore, resolution of the IIED claim with respect to facts in the Amended Complaint is not substantially dependant on the analysis of the CBA, and Section 301 preemption cannot apply to the facts interposed in the Amended Complaint.

conduct alleged is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy*, 448 N.E.2d at 90 (internal quotation marks and citation omitted); (Pl. Mem. 17).

Moreover, the Amended Complaint lacks specific facts sufficient to adequately plead intent. Under New York law, the conduct alleged must be "intentionally directed at the plaintiff." *See Gluckman v. Am. Airlines, Inc.*, 844 F. Supp. 151, 158 (S.D.N.Y. 1994) (citing *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985); *see also Green v. Leibowitz*, 118 A.D.2d 756, 500 N.Y.S.2d 146 (App. Div. 1986) ("gravamen of a cause of action for intentional infliction of emotional distress is that the conduct complained of 'is especially calculated to cause, and does cause, mental distress of a very serious kind'")(citations omitted). Here, the Plaintiff has not alleged any facts that Defendants' conduct was directed intentionally or recklessly at her; moreover, it strains credulity that to think, even had Plaintiff so alleged, that Defendants purposefully engineered "improper quality of patient care" in order to intentionally cause the Plaintiff mental distress. Thus the Plaintiff has failed to state a claim for IIED.[8]

Defendant's motion to dismiss Plaintiff's claim for Intentional Infliction of Emotional Distress is GRANTED.

## CONCLUSION

---

[8] Likewise, to the extent that Plaintiff's Amended Complaint can be read as alleging a claim for Negligent Infliction of Emotional Distress, (NIED) this too must fail. New York law allows a plaintiff to recover for NIED under either the bystander theory or the direct duty theory. *See Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 315 (S.D.N.Y. 2005). To state a claim under the bystander theory, a plaintiff must allege that she witnessed the death or serious bodily injury of a member of her immediate family, which Plaintiff has not done. *Mortise v. United States*, 102 F.3d 693 (2d Cir. 1996). Under the direct duty theory, a plaintiff must allege that she suffered an emotional injury as a result of a defendant's breach of a duty "which unreasonably endangered her own physical safety . . . or caused her to fear for her physical safety." *Wahlstrom v. Metro-N. Commuter R.R. Co.*, 89 F. Supp. 2d. 506, 530 (S.D.N.Y. 2000) (citations omitted). Plaintiff has neither alleged a breach of any kind, nor has shown that she feared for her physical safety in any way.

Defendant's motion to dismiss [Doc. No 9] is GRANTED.  This matter is re-committed to the assigned Magistrate Judge for all remaining pre-trial issues including supervision of any settlement discussions, and the preparation of a Joint Pre-Trial Order consistent with this Memorandum and Order.

SO ORDERED.

Dated: Brooklyn, New York
      March 30 , 2010

/S/
_____
ROSLYNN R. MAUSKOPF
United States District Judge